Edward W. Floyd
FLOYD ZADKOVICH (US) LLP
215 Park Avenue South, 11th Floor
New York, NY 10003
(917) 999-6914

ed.floyd@floydzad.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
BULK TRADING S.A.,

                                Plaintiff,                              Case No.:

                -against-                          **COMPLAINT IN ADMIRALTY**

MID-SHIP GROUP LLC,

                                Defendant.
-------------------------------------------------------------------------x

Plaintiff, Bulk Trading S.A. ("Bulk Trading" or "Plaintiff"), by its below-signed counsel, for its Complaint ("Complaint") against defendant, Mid-Ship Group LLC ("Mid-Ship"), alleges, upon information and belief as to allegations not personally known to it, as follows:

### JURISDICTION AND VENUE

1.      This is a case of admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) as the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the parties are citizens of a foreign state (Bulk Trading) and, on information and belief, of a US state (Mid-Ship).

1

3. This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Bulk Trading's causes of action for negligent misrepresentation and for breach of an agent's implied warranty of authority.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Mid-Ship maintains a principal place of business within this District.

5. This Court has personal jurisdiction over Mid-Ship because it is doing business in this State.

## PARTIES

6. Bulk Trading was, and still is, a corporation organized and existing under the laws of a foreign country with an office and principal place of business located in Switzerland.

7. On information and belief, Mid-Ship is a limited liability company organized under the laws of the State of Delaware which is registered to do business in New York State and which maintains a principal place of business within the geographical confines of this District.

## UNDERLYING EVENTS

### Overview

8. On or about March 8, 2016, Bulk Trading (as charterers) entered a voyage charter with Venmar Shipping Group S.A. (as owners) ("Venmar"), on an Amwelsh 1979 form with respect to the MV HH 18, for the carriage of bulk coal from Novorossiysk, Russia to Marghera, Italy (the "Charter Party").

9. Running up to the Charter Party's formation, and thereafter with respect to its performance, Mid-Ship served as brokers with agency duties for accurately passing communications relating to performance and coordination between Venmar and Bulk Trading. Mid-Ship thus had an obligation to accurately convey vessel and Charter Party related

communications between Venmar and Bulk Trading. It also had a duty to exercise reasonable care and due diligence in conveying such communications, and that duty was heightened: (a) when communications concerned financial instructions; and (b) in light of the fact that Mid-Ship passed communications on a quote/unquote basis without disclosing the original source of communications because the quote/unquote basis meant that Mid-Ship retained exclusive and superior knowledge about all pertinent circumstances.

10. To be clear, the foregoing reference to a quote/unquote basis means that Mid-Ship only sent to Bulk Trading the <u>content</u> of messages being passed on behalf of the vessel owners or purported owners. The concerned messages sent by Mid-Ship neither forwarded the entirety of communications from owners nor did they state the email addresses from which such original communications had been received. In doing so, Mid-Ship warranted the accuracy of its transmittals, the authenticity of the original senders, and Mid-Ship's own authority to send such communications on behalf of the vessel owners. On information and belief, Mid-Ship sent messages on such a quote/unquote basis because doing so serves as part of its business strategy by virtue of preserving the need for its role in the maritime trade.

11. In consideration for its services, Mid-Ship was to receive a commission based upon freight payments made under the Charter Party.

12. Nonetheless, Mid-Ship fell for a readily identifiable fraud and thereby provided false freight instructions to Bulk Trading. This caused great harm to Bulk Trading.

**Particular Events**

13. On March 29, 2016, Pelin Uyanik of Mid-Ship sent an email to Bulk Trading which represented that it was attaching the "freight authorization letter along with Venmar's freight invoice" (the "March 29th Email"). The March 29th Email also requested "payment details

3

soonest." Its attached invoice called for payment (in the amount of $150,562.50) to a bank in Lebanon for the benefit of Sung Shipping & Chartering SAL ("Sung"). An authorization letter attached thereto also provided Venmar's authorization for Sung to receive that freight.

14. It should be noted that Ms. Uyanik's LinkedIn page identifies her as working in dry bulk operations for "MID-SHIP Group LLC." Moreover, at all material times described herein, she used an email address with a 'midship.com' domain name. The March 29th Email also contained express reference to the www.midship.com website where, on that website's first page, commercial counterparties viewing the site are prominently informed that Mid-Ship's "Headquarters" are located at "Port Washington, NY 11050 United States of America". It should also be noted that, on information and belief, the midship.com domain name is hosted on servers located in the US.

15. As set forth above, it was also Mid-Ship's practice throughout this process to use a quote/unquote basis for passing information from Venmar (or those purporting to be Venmar) to Bulk Trading. As such, at all material times, only Mid-Ship saw the actual emails—and email addresses—from which such information originated. Likewise, only Mid-Ship had the opportunity to validate the authenticity of these communications.

16. On March 30, 2016 at 9:06 AM (local time), Ms. Uyanik of Mid-Ship sent another email to Bulk Trading. This message represented that Mid-Ship was providing a communication from Venmar (on a quote/unquote basis) stating that: (a) "Owners [Venmar] [had] just confirmed" that they needed to change banking details; and (b) those new details would be forwarded shortly (the "March 30th 9:06 AM Email"). Again, the March 30th 9:06 AM Email also contained express reference to the www.midship.com website where, on that website's first page, commercial

counterparties viewing the site are prominently informed that Mid-Ship's "Headquarters" are located at "Port Washington, NY 11050 United States of America".

17. On March 30, 2016 at 2:50 PM (local time), Ms. Uyanik of Mid-Ship sent another email to Bulk Trading which represented that Mid-Ship was providing (on a quote/unquote basis) Venmar's revised banking details for payment of freight (the "March 30th 2:50 PM Email"). Again, the March 30th 2:50 PM Email also contained express reference to the www.midship.com website where, on that website's first page, commercial counterparties viewing the site are prominently informed that Mid-Ship's "Headquarters" are located at "Port Washington, NY 11050 United States of America".

18. On March 30, 2016 at 4:56 PM (local time), Ms. Uyanik of Mid-Ship sent another email to Bulk Trading which represented that Mid-Ship was providing (on a quote/unquote basis) Venmar's revised invoice and authorization letter (the "March 30th 4:56 PM Email"). Again, the March 30th 4:56 PM Email also contained express reference to the www.midship.com website where, on that website's first page, commercial counterparties viewing the site are prominently informed that Mid-Ship's "Headquarters" are located at "Port Washington, NY 11050 United States of America".

19. On April 1, 2016 at 10:34 AM (local time), Bulk Trading forwarded a SWIFT report to Mid-Ship showing that payment had been made in the amount of $150,562.50, as called for by the invoice and authorization letter (sent via the March 30th 4:56 Email) which Mid-Ship had represented as having been duly issued by Venmar (the "April 1st 10:34 AM Email").

20. *Four days later*, on or about April 5, 2016 at 10:23 AM (local time), Mr. Murat Kahya of Mid-Ship sent an email to Bulk Trading which stated "Gd day . . . following is received from owners [Venmar]," and which proceeded to quote Venmar as stating that:

5

ATTACHED COIPIES [sic] OF THE INVOICE WE DID NOT SENT [sic].

WE SEND THE ONE WITH SUNG SHIPPING / LEBAON [sic] AS USUAL

WE KINLDY [sic] REQUEST FROM YOUR TO URGENTLY

-ASK CHARTERS WITH DRAW THE TRANSFER

-THE FULL SWIFT COPY SHOWS THE MONEY TRANSFRED [sic]

-TO SEND US CHARTERS FULL STYLE

URGENTLY PLEASE

(the "April 5th 10:23 AM Email").  (Prior to discovery, Bulk Trading does not know how long Mid-Ship waited before informing Bulk Trading that the April 1st freight payment had been made to false banking details.)

21.     It should also be noted that Mr. Kahya is identified on LinkedIn as being the Chartering Manager for "MID-SHIP Group LLC." Moreover, at all material times described herein, he used an email address with a 'midship.com' domain name.  Thus, on information and belief, both Ms. Uyanik and Mr. Kahya were working on behalf of Mid-Ship Group LLC notwithstanding their apparently doing so from the defendant's Istanbul office.

22.     Following the payment which Bulk Trading made based upon instructions that Mid-Ship passed without flagging a fraud, Bulk Trading was unable to recover the April 1st freight payment. (Only the de minimis amount of $4,913.92 was ever refunded to Bulk Trading.)

23.     Venmar still insisted upon payment to it, and maritime arbitration proceedings between Venmar and Bulk Trading followed in London pursuant to the Charter Party's provisions. Thereafter, Bulk Trading ultimately had to, and did, pay freight plus costs and interest, to Venmar. Basically, Bulk Trading had to pay twice (and then some). It should also be noted that Mid-Ship declined Bulk Trading's demand to join those proceedings.

24. Mid-Ship's various breaches, errors and omissions caused Bulk Trading to suffer losses equal to:

    a. USD 161, 379.03 (for freight plus interest) (equal to USD 156,465.11 after subtracting the $4,913.92 refunded);

    b. EUR 9,691.53 (for legal costs); AND

    c. GBP 24,807.00 (for arbitration costs).

The sum of the foregoing amounts, converted into dollars at exchange rates prevailing at the approximate time of this Complaint's filing, yields an amount in excess of $200,000.00. Bulk Trading was thus damaged in an amount, to be determined at trial, equal to, at least, $200,000.00 plus interest and costs.

25. Such damages were caused by Mid-Ship's breach of its duties and associated errors and omissions. Indeed, simple precautions and basic attentiveness by Mid-Ship could have readily prevented this situation from ever happening.

26. A basic comparison of what are understood to have been the correct and incorrect email addresses for Venmar readily confirms the same.

27. On information and belief, the correct email addresses for Venmar or its representatives would have been operation@TfleetShipping.com and oper.fleet@gmail.com.

28. However, in connection with passing payment instructions to Bulk Trading, Mid-Ship failed to realize that it was communicating with operation@tfleetshiPingS.com and oper.fleetT@gmail.com.

29. The differences are obvious and should have been easily identified by Mid-Ship – whether by being caught in email filters or seen by a reasonably attentive human eye. The mere fact that these events came to fruition demonstrates that Mid-Ship did not have proper, company-

wide cybersecurity and anti-fraud protocols, protections and training in place. In that regard, discovery will be needed to ascertain the full extent to which Mid-Ship lacked appropriate, company-wide cybersecurity and anti-fraud protocols, protections and training in place to guard against situations such as this. Furthermore, scams such as phishing and spoofing are by no means a recent development, and company-wide precautions should have been implemented by Mid-Ship many years prior. Basically, appropriately diligent operators in Mid-Ship's profession should have caught this fraud and, in any event, the company should have had the systems and protocols in place to prevent it in the first place in addition to applicable insurance to cover the harm caused by negligence and other fault.

30. By reason of the foregoing, Bulk Trading has sustained significant losses in an amount, to be determined at trial, but equal to, at least, $200,000.00 plus interest and costs.

**FIRST CAUSE OF ACTION**
**(Breach of Maritime Contract)**

31. Paragraphs 1 through 30 of this Complaint are repeated and realleged as if fully set forth herein.

32. Mid-Ship owed maritime contractual obligations to Bulk Trading to provide services in connection with performance of the Charter Party between Venmar and Bulk Trading. Mid-Ship's principal role in that regard was to serve as an accurate and reliable conduit for vessel and Charter Party related communications between Venmar and Bulk Trading.

33. Mid-Ship breached those obligations by sending freight instructions which came from a fraudster, rather than from Venmar, to Bulk Trading.

34. As a direct and proximate result of Mid-Ship's breach of contract, Bulk Trading has suffered damages, in an amount to be determined at trial, equal to, at least, $200,000.00 plus interest and costs.

8

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)

35. Paragraphs 1 through 34 of this Complaint are repeated and realleged as if fully set forth herein.

36. Mid-Ship had a duty, on account of its special role as a broker serving as a conduit for voyage related communications between Venmar and Bulk Trading, to provide correct information. That duty was particularly heightened where the concerned communications pertained to payment information. That duty was also heighted given that Mid-Ship passed communications on a quote/unquote basis.

37. In breach of that duty, Mid-Ship conveyed payment instructions to Bulk Trading which Mid-Ship should have known were fraudulent.

38. Mid-Ship knew that the information being conveyed to Bulk Trading was needed by Bulk Trading for a serious purpose.

39. Bulk Trading intended to rely and act upon the payment instructions supplied by Mid-Ship, and this was known to Mid-Ship.

40. Bulk Trading reasonably relied upon the payment instructions supplied by Mid-Ship to its detriment.

41. Mid-Ship thereby committed the tort of negligent misrepresentation and caused substantial damages to Bulk Trading.

42. Mid-Ship is accordingly liable to Bulk Trading, in an amount to be determined at trial, equal to, at least, $200,000.00 plus interest and costs.

## THIRD CAUSE OF ACTION
### (Maritime Indemnity)

43. Paragraphs 1 through 42 of this Complaint are repeated and realleged as if fully set forth herein.

44. As a result of Mid-Ship's failure to properly perform obligations which it owed to Bulk Trading, including its duty to exercise reasonable care and due diligence (particularly when dealing with financial matters), Mid-Ship caused the underlying harm on account of which Venmar brought and recovered claims against Bulk Trading in London maritime arbitration. Those claims were maritime claims for outstanding freight under the Charter Party.

45. Mid-Ship is therefore liable under the general maritime law to indemnify Bulk Trading in full.

46. Mid-Ship is accordingly liable to indemnify Bulk Trading, in an amount to be determined at trial, equal to, at least, $200,000.00 plus interest and costs.

## FOURTH CAUSE OF ACTION
### (Breach of Implied Warranty of Authority)

47. Paragraphs 1 through 46 of this Complaint are repeated and realleged as if fully set forth herein.

48. Each time that Mid-Ship sent communications to Bulk Trading from the vessel owners or those purporting to be the vessel owners (or representatives), Mid-Ship impliedly warranted that it had authority to send such communications on behalf of the Venmar. The same applies as to every communications sent by Mid-Ship pertaining to payment instructions.

49. By sending false payment instructions to Bulk Trading, Mid-Ship thereby breached its implied warranty of authority.

50. Mid-Ship is accordingly liable to indemnify, or otherwise make Bulk Trading whole, in an amount to be determined at trial, equal to, at least, $200,000.00 plus interest and costs.

**WHEREFORE**, Plaintiff respectfully submits as follows:

1. That the Court enter judgment in favor of Bulk Trading, and against Mid-Ship, in an amount to be determined at trial, equal to, at least, $200,000.00 plus interest and costs; AND

3. That the Court grant such other, further, and different relief as may be just, proper and equitable.

Dated: August 16, 2018
       New York, New York

FLOYD ZADKOVICH (US) LLP

By: /s/ Edward W. Floyd
    Edward W. Floyd

215 Park Avenue South, 11th Floor
New York, New York 10003
Tel.: (917) 999-6914
ed.floyd@floydzad.com

*Attorneys for Plaintiff*